**HOLLAND & HART, LLP**
Erik F. Stidham
A. Dean Bennett
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: (208) 342-5000
efstidham@hollandhart.com
adbennett@hollandhart.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Gregory L. Watts (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA 98014
Telephone: (206) 883-2500
gwatts@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Ignacio E. Salceda (admitted *pro hac vice*)
Betty Chang Rowe (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
isalceda@wsgr.com
browe@wsgr.com

*Attorneys for Defendants Micron Technology, Inc., Sanjay Mehrotra, and Mark Murphy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: MICRON TECHNOLOGY, INC. SECURITIES LITIGATION | CASE NO.: 1:25-CV-00191-BLW |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions.* | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 6

I. APPLICABLE LEGAL STANDARDS ..... 6

II. THE COMPLAINT FAILS TO PLEAD A FALSE STATEMENT OR OMISSION ..... 7

A. Plaintiffs' Theory Is Fundamentally Flawed ..... 8

B. Plaintiffs Fail To Plead The Falsity Of Any Statement ..... 9

1. Plaintiffs Fail to Plead a Material Misrepresentation or Omission Regarding Supply-Demand ..... 9

2. Plaintiffs Fail to Plead a Material Misstatement or Omission Regarding Micron's Vague, Long-Term Pricing and Financial Performance Predictions ..... 11

C. Most Of The Statements Are Also Protected By The Safe Harbor ..... 12

D. Many Of The Statements Are Also Non-Actionable Puffery Or Opinion ..... 14

III. THE COMPLAINT FAILS TO PLEAD THE REQUISITE SCIENTER ..... 15

A. The Complaint Pleads No Contemporaneous Facts Showing Scienter ..... 15

B. Plaintiffs' Confidential Witness Does Not Raise A Strong Inference of Scienter ..... 16

C. Plaintiffs' Purported Expert Does Not Raise A Strong Inference of Scienter ..... 17

D. Mr. Mehrotra's Stock Sales Do Not Raise A Strong Inference Of Scienter ..... 18

E. Holistically, Plaintiffs Fail To Plead A Strong Inference Of Scienter ..... 20

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Applestein v. Medivation, Inc.*,
561 F. App’x 598 (9th Cir. 2014) ....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................8

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ....................9

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ....................9

*City of Marysville Gen. Emps.' Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
2011 WL 4584778 (D. Idaho Sept. 12, 2011).................... *passim*

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................10, 11, 20

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ....................16

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013) ....................17, 20

*E. Ohman J. v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2022) ....................17

*Eckert v. PayPal Holdings, Inc.*,
831 F. App’x 366 (9th Cir. 2020) ....................18

*Hong v. Extreme Networks, Inc.*,
2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ....................8

*In re Alteryx, Inc. Sec. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021) ....................19

*In re Aspeon, Inc. Sec. Litig.*,
168 F. App’x 836 (9th Cir. 2006) ....................17

*In re Checkpoint Therapeutics Sec. Litig.*,
2025 WL 1434400 (S.D.N.Y. May 19, 2025) ....................18

*In re Cisco Sys. Inc. Sec. Litig.*,
2013 WL 1402788 (N.D. Cal. Mar. 29, 2013)....................20

*In re Cloudera, Inc. Sec. Litig.*,
121 F.4th 1180 (9th Cir. 2024) ........................................................................8

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ........................................................................13, 14

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ........................................................14

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ........................................................................17, 18

*In re Nimble Storage, Inc. Sec. Litig.*,
756 F. App'x 779 (9th Cir. 2019) ........................................................................14, 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ........................................................................7

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)........................................................15

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ........................................................................10, 19

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ........................................................................12

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996) ........................................................................10

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020) ........................................................8, 9, 10, 16

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ........................................................................19

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................................14

*Jaszczyszyn v. SunPower Corp.*,
2024 WL 3463348 (N.D. Cal. Jul. 17, 2024)........................................................13, 14

*Kong v. Fluidigm Corp.*,
2023 WL 2134394 (9th Cir. Feb. 21, 2023) ........................................................10, 13, 14

*Lipton v. PathoGenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ........................................................................16

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020)........................................................15, 16

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ....................10, 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................6, 9, 18

*Okla. Police Pen. & Ret. Sys. v. PlayAGS, Inc.*,
2025 WL 927296 (9th Cir. Mar. 27, 2025)....................15

*Omnicare, Inc. v. Laborers Dis. Council Constr. Indus. Pen. Fund*,
575 U.S. 175 (2015)....................15

*Petersen v. Stem, Inc.*,
2024 WL 4602710 (N.D. Cal. Aug. 30, 2024) ....................19

*Police Ret. Sys .of St.Louis v. Intuitive Surgical, Inc.*,
2012 WL 1868874 (N.D. Cal. May 22, 2012)....................16

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ....................13, 14, 16, 17

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ....................8, 18, 19, 20

*Salzman v. ImmunityBio, Inc.*,
753 F. Supp. 3d 1050 (S.D. Cal. 2024)....................18

*Sgarlata v. PayPal Holdings, Inc.*,
409 F. Supp. 3d 846 (N.D. Cal. 2019)....................18

*Sigman v. Nuscale Power Corp.*,
2025 WL 1455432 (D. Or. May 21, 2025) ....................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................1, 7

*Weston Family P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ....................9

*Williams v. Globus Med., Inc.*,
869 F.3d 235 (3d Cir. 2017)....................11

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ....................10, 20

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ....................8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ....................7, 16, 17, 19

## STATUTES

15 U.S.C. § 78u-4(b)(1) ....................6, 7, 17

15 U.S.C. § 78u-4(b)(2)(A)....................7, 17

15 U.S.C. § 78u-4(b)(3) ....................7

15 U.S.C. § 78u-5(i)(1) ....................12, 13

15 U.S.C. § 78u-5(i)(1)(D) ....................13

15 U.S.C. § 78u-5(c)(1) ....................13

15 U.S.C. § 78u-5(c)(1)(B)....................14

## RULES

Fed. R. Civ. P. 9(b) ....................2, 11

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| ¶ or Complaint | Amended Complaint (D.I. 59) |
| AI | Artificial Intelligence |
| CS | Challenged Statements |
| CW | Confidential Witness |
| Class Period | March 28, 2023 through December 18, 2024 |
| DRAM | Dynamic Random-Access Memory |
| Ex. | Exhibits attached to the Declaration of Betty C. Rowe, filed herewith |
| FQ3-22 | Micron's third quarter ending June 2, 2022 |
| FQ4-22 | Micron's fourth quarter ending September 1, 2022 |
| FQ1-23 | Micron's first quarter ending December 1, 2022 |
| FQ2-23 | Micron's second quarter ending March 2, 2023 |
| FQ3-23 | Micron's third quarter ending June 1, 2023 |
| FQ4-23 | Micron's fourth quarter ending August 31, 2023 |
| FQ1-24 | Micron's first quarter ending November 30, 2023 |
| FQ2-24 | Micron's second quarter ending February 29, 2024 |
| FQ3-24 | Micron's third quarter ending May 30, 2024 |
| FQ4-24 | Micron's fourth quarter ending August 29, 2024 |
| FQ1-25 | Micron's first quarter ending November 28, 2024 |
| FQ2-25 | Micron's second quarter ending February 27, 2025 |
| FQ3-25 | Micron's third quarter ending May 29, 2025 |
| FY-22 | Micron fiscal year ending September 1, 2022 |
| FY-23 | Micron's fiscal year ending August 31, 2023 |
| FY-24 | Micron's fiscal year ending August 29, 2024 |
| HBM | High Bandwidth Memory |
| Individual Defendants | Defendants Mehrotra and Murphy |
| Mehrotra | Defendant Sanjay Mehrotra |
| Micron or Company | Defendant Micron Technology, Inc. |
| Murphy | Defendant Mark Murphy |
| NAND | NAND Flash Memory |
| Plaintiffs | Lead Plaintiffs Morris Zelikovsky, Ronald Timms, and David A. Milman |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SEC | U.S. Securities and Exchange Commission |

*Unless otherwise noted, all emphases are added and all citations are omitted.

## INTRODUCTION

Predictions about market conditions, especially those that turn out to be accurate, do not constitute securities fraud. Yet that is the essence of this putative securities class action, which is premised on Defendants' predictions that the supply-demand environment would gradually improve. And it did—as reflected in Micron's consistently improving financial performance during the Class Period: ***Micron's revenue increased every quarter during the Class Period, from $3.69 billion in FQ2-23 (ending March 2, 2023) to $8.81 billion in FQ1-25 (ending Nov. 28, 2024)—more than double than at the start***. Plaintiffs do not allege that Micron failed to achieve its own revenue guidance at any time during the Class Period, including FQ1-25. And they ignore that Micron's stock price ***increased*** during the Class Period, from $59.28 at the start to $87.09 after the alleged revelation of the "truth" (¶¶ 6, 11-12), and just closed at $124.42. These facts paint a picture of a successful, forthright leader in the semiconductor memory and storage industry—not one of a corporation engaged in fraud.

Plaintiffs' baseless case fails to meet the "[e]xacting pleading requirements" of the PSLRA, enacted "[a]s a check against abusive litigation[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007). Ignoring Micron's actual financial performance, the crux of Plaintiffs' claim is that Defendants fraudulently misstated the supply-demand environment by not disclosing customer demand weakness and the impact of competition that manifested in FQ1-25—as long as ***21 months after*** many of the challenged statements were made.[1] Plaintiffs thus incredibly allege without any supporting facts that Defendants knew and should have disclosed ***years before FQ1-25*** the precise industry conditions that would present in that quarter and their impact on Micron.

The Complaint also fails to plead particularized facts raising a "strong inference" of scienter, as required by the PSLRA. It is devoid of ***any*** contemporaneous facts showing that Defendants made the supply-demand statements knowing that a year or more later, Micron would experience a temporary demand weakness in one aspect of its business. A single former low-level

[1] To assist the Court, a Chart of Challenged Statements is attached as Exhibit 1 to the Declaration of Betty C. Rowe, numbering them and identifying their date and source. These statements are identified as "CS __" herein.

employee's generic statements that Micron tracked financial information and the conclusory, uncorroborated opinions of a purported expert relying on nothing more than Micron's publicly-disclosed information (and thus known to investors) regarding inventory say nothing about the Individual Defendants' mental state. Micron's CEO's stock sales also do not support scienter, as Plaintiffs allege the sales were made under a pre-established trading plan and were 43.9% of his total holdings. And, the other defendant did not sell a single share during the 21-month Class Period, belying an inference that the CEO sold on inside information. Further negating scienter is Micron's repurchase of over $300 million in stock during the Class Period, which would be illogical if Micron knew its stock price was artificially inflated. Plaintiffs' allegations fall far short of the high pleading standards of the PSLRA and Rule 9(b). The Complaint should be dismissed.

## STATEMENT OF FACTS

Micron develops, manufactures, and sells industry-leading memory and storage products, including dynamic random-access memory ("DRAM") and NAND flash memory ("NAND") semiconductors. ¶¶ 3, 22, 31. Micron's products are sold in numerous consumer and business markets, including mobile, PC, automotive, and data center. ¶ 4.

***The Pre-Class Period Downturn in the Industry.*** The semiconductor memory and storage market is volatile. In 2021, the market experienced an "upturn," and suppliers substantially increased their fabrication capacity to meet increased demand during a global chip shortage. Ex. 2 at 1. Beginning in FQ4-22 (ending September 1, 2022),[2] the industry experienced a "sharp" downturn, the worst in 13 years, due to global and macroeconomic challenges combined with downward inventory adjustments by customers. ¶ 52; Ex. 3 at 3. This downturn led to a drop in sales and reduced selling prices for DRAM and NAND products. Micron's revenue dropped by nearly 60% over three quarters, from $8.64 billion to $3.69 billion. *See* Chart A, *infra*. Its inventories ballooned by more than 50%, from $5.63 billion to $8.13 billion over the same period, even after a $1.83 billion inventory write off. *See* Chart B, *infra*; ¶ 55.

[2] Micron's fiscal year ends the 52 or 53-week period ending on the Thursday closest to August 31. ¶ 31. Micron's FY-23 ended August 31, 2023 and FY-24 ended August 29, 2024. *Id*. Micron's FY-25 will end August 28, 2025.

***The Market's Gradual Recovery.*** On March 28, 2023, the first day of the Class Period, Micron cautiously predicted that although the downturn was not over and market conditions remained weak, the industry's supply-demand balance would "gradually improve." ¶ 62; Ex. 3 at 3, 5-9.[3] Micron's prediction was in line with those of others. *See* ¶ 63 (Daiwa Capital Markets predicted "a gradual recovery rather than a sharp rebound" for the industry).

Market conditions ***did*** gradually improve. Customer inventory levels began to normalize in 2023, though they were still "elevated" at the end of FY-23 (ending August 31, 2023). *See* Ex. 4 at 44. Supply tightened due to industry-wide supply discipline and while "demand for DRAM and NAND [was] improving" (¶ 122 (emphasis omitted)), Micron warned in its 2023 10-K that a "significant supply-demand mismatch" remained at the end of FY-23. Ex. 4 at 44. During 2024, pricing, margins, and average selling prices improved, and Micron experienced demand growth, driven in part by deployment of artificial intelligence ("AI"). Ex. 5 at 47-48.[4] By the end of FY-24, industry supply and demand balance had "substantially improved from 2023 conditions." *Id.* at 47. "In light of improved market conditions," Micron announced in August 2024 that it would resume its stock Repurchase Program which it had suspended in December 2022 due to the industry downturn. *See* Ex. 6. In FQ4-24, Micron repurchased $300 million of its stock at an average price of $93.07. Ex. 5 at 46, 62. Micron also reinstated bonuses and phased out certain other temporary cost-saving measures that were implemented in 2023. *Id.* at 47.

***Micron's Improving Financial Performance.*** The gradual improvement in industry supply-demand conditions was reflected in Micron's gradually improving financial performance. Compared to prior quarters, Micron's total quarterly revenue was at its ***lowest level*** at the start of the Class Period in FQ2-23 and ***steadily increased each quarter*** throughout the Class Period:

---

[3] *See* ¶ 98 (March 28, 2023: "we expect gradual improvements to the industry's supply-demand balance"); CS 4, ¶ 104 (March 28, 2023: expecting "demand and supply balance will gradually improve through the course of the year."); CS 5, ¶ 106 (June 28, 2023: "[W]e expect margins to improve as industry supply-demand balance is gradually restored.").

[4] *See* CS 17, ¶ 130 (Dec. 21, 2023: discussing FQ1-24 and factors that "resulted in an improved industry supply and demand balance"); CS 21, ¶ 138 (same for the first six months of 2024); CS 22, ¶ 140 (March 21, 2024: discussing FQ2-24 revenue increases "as a result of improving conditions across most markets"); CS 27, ¶ 151 (June 27, 2024: discussing FQ3-24 and increase in average selling prices "as a result of improving conditions across most markets in 2024"); CS 31, ¶ 160 (Sept. 25, 2024: "The supply-demand environment is healthy.").

**Chart A - Micron Quarterly Revenue in Billions (FQ3-22 to FQ1-25)**[5]

| | FQ3-22 (6/2/22) | FQ4-22 (9/1/22) | FQ1-23 (12/1/22) | FQ2-23 (3/2/23) | FQ3-23 (6/1/23) | FQ4-23 (8/31/23) |
|---|---|---|---|---|---|---|
| DRAM | $6.27 | $4.81 | $2.83 | $2.72 | $2.67 | $2.75 |
| NAND | $2.29 | $1.69 | $1.10 | $0.885 | $1.01 | $1.21 |
| **Total** | **$8.64** | **$6.64** | **$4.08** | **$3.69** | **$3.75** | **$4.01** |

| | FQ1-24 (11/30/23) | FQ2-24 (2/29/24) | FQ3-24 (5/30/24) | FQ4-24 (8/29/24) | FQ1-25 (11/28/24) |
|---|---|---|---|---|---|
| DRAM | $3.43 | $4.15 | $4.69 | $5.33 | $6.40 |
| NAND | $1.23 | $1.57 | $2.07 | $2.37 | $2.24 |
| **Total** | **$4.72** | **$5.82** | **$6.81** | **$7.75** | **$8.71** |

In all, Micron's ***quarterly revenue grew every single quarter of the Class Period, more than doubling during the Class Period***.

Despite the significant increase in sales, quarterly total inventories increased 9.2% during the Class Period, and inventory remained higher than before the industry downturn:

**Chart B -Micron Quarterly Inventory in Billions (FQ3-22 to FQ1-25)**[6]

| FQ3-22 (6/2/22) | FQ4-22 (9/1/22) | FQ1-23 (12/1/22) | FQ2-23 (3/2/23) | FQ3-23 (6/1/23) | FQ4-23 (8/31/23) |
|---|---|---|---|---|---|
| $5.63 | $6.66 | $8.36 | $8.13 | $8.24 | $ 8.39 |

| FQ1-24 (11/30/23) | FQ2-24 (2/29/24) | FQ3-24 (5/30/24) | FQ4-24 (8/29/24) | FQ1-25 (11/28/24) |
|---|---|---|---|---|
| $8.28 | $8.44 | $8.51 | $8.88 | $8.71 |

During the Class Period, Micron's days in inventory ("DIO") ranged from 149 to 170 days, above the DIOs before the downturn (¶ 94) and above Micron's 120-day disclosed target. Ex. 9 at 9.

***Ramp Up of High Value Products for Anticipated Growth.*** Amidst the industry's gradual improvement, including a rising demand to support generative AI, Micron developed and was ramping new high-value products like 1-beta DRAM nodes, G8 and G9 NAND nodes, and high bandwidth memory ("HBM") solutions.[7] For example, Micron's new HBM3E product went from

[5] ¶ 53; Ex. 4 at 83; Ex. 5 at 83; Composite Ex. 7(a) at 3, 9; 7(b) at 13, 19; 7(c) at 24, 30; 7(d) at 43, 49; 7(e) at 53, 59; 7(f) at 63, 69; 7(g) at 73, 79; 7(h) at 83, 89; Ex. 8 at 79. The date in the parenthetical denotes the ending date of each quarter, and the red text denotes the quarters pertaining to the start and end of the Class Period.

[6] ¶ 91; Ex. 4 at 67; Ex. 5 at 69; Composite Ex. 7(a) at 6; 7(b) at 16; 7(c) at 27; 7(d) at 46; 7(e) at 56; 7(f) at 66; 7(g) at 76; 7(h) at 86; Ex. 8 at 65.

[7] *See* Ex. 10 at 4 (Micron "commenced volume production" of HBM3E; "expect 12-high HMB3E will start ramping in high-volume production"); Ex. 11 at 3-4, 9 ("continuing to ramp" (continued...)

sampling at the start of the Class Period to volume production in early 2024 (Ex. 10 at 4), to generating $100 million in revenue in FQ3-24 (Ex. 11 at 4), "several hundred millions of dollars" in FQ4-24 (Ex. 12 at 4), and a "sequential doubling" of revenue in FQ1-25 (Ex. 13 at 3). By February 2024, Micron reported that HBM3E was sold out for calendar 2024 and by May 2024, was sold out for 2025. *See* Ex. 10 at 4; Ex. 11 at 4.

***The Class Period Ends With Record Quarterly Revenue.*** On December 18, 2024, the last day of the Class Period, Micron reported record revenue of $8.71 billion for FQ1-25, an increase of 12% from the prior quarter (*see* Ex. 14), and more than double that at the start of the Class Period. DRAM sales increased; sales of NAND products decreased by 5%, primarily due to a decrease in shipment and in average selling price in FQ1-25. *See* Composite Ex. 7(h) at 93; ¶ 166. Micron's press release advised, "[w]hile consumer-oriented markets were weaker in the near term, we anticipate a return to growth in the second half of our fiscal year." Ex. 14; ¶ 167.

On December 18, 2024, Micron also provided guidance for FQ2-25 for the first time, which was lower than what Wall Street expected. ¶¶ 88, 167. Micron explained that the guidance was driven by NAND, which was impacted by slower growth in consumer devices, ongoing inventory adjustments in the consumer market, and a temporary moderation in data center SSD purchases by customers after several quarters of rapid growth. ¶ 168; Ex. 13 at 3, 6, 9-10; *see also* Composite Ex. 7(h) at 92. Micron also advised it had seen an increase in supply "from a China-based DRAM and a China-based NAND supplier." ¶ 171. After these disclosures, Micron's stock price dropped from $103.90 to $87.09, still over 50% above the $59.28 price at the start of the Class Period. ¶¶ 6, 179. On July 8, 2025, the day before this filing, Micron stock closed at $124.42. Ex. 15 at 13.

***Micron's Robust Cautionary Statements.*** Throughout the Class Period, Micron repeatedly cautioned about the risks it faced. It warned about the impact volatile industry conditions could have on its business. Those risks included "***a weak demand environment, industry oversupply,***

---

our production in HBM; expect volume production for 1-gamma DRAM, the next-generation NAND node, and 12-high HBM3E in calendar 2025); Ex. 12 at 3-5, 11, 15 (1-beta DRAM and G8 and G9 NAND nodes "are ramping in high volume"; "on track for volume production" of 1-gamma DRAM "in calendar 2025"; "continuing to ramp up our production capacity in DRAM"); Ex. 5 at 6-7 ("majority" of 2024 DRAM production was "leading-edge" 1-alpha and 1-beta nodes; "In 2024, we began volume production of Micron G9 NAND, representative of the industry's ninth-generation 3D NAND node. Micron G8 and G9 NAND are ramping in high volume").

***inventory surpluses***" (Ex. 4 at 22); "elevated inventory levels" of customers and distributors may cause decrease in demand of Micron's products, resulting in "***industry oversupply***" and pricing declines (*id.* at 28); "***customers' demand for our products may fluctuate due to factors beyond our control***" (*id.* at 29); and "***the dynamics of our markets and our customers can create periods of imbalance***[.]" *Id.* at 23. Micron cautioned, "***the volatile nature of the semiconductor memory and storage markets***" may impact its prices (*id.* at 53) and warned about "intense" competition, including the specific "***threat of increasing competition***" from Chinese government-backed companies such as ***Yangtze Memory Technologies Co. Ltd.*** *("YMTC")*. *Id.* at 24; ¶ 81. Micron warned that any risk factor could cause "actual results … to differ materially from those contained in any forward-looking statement" and "could have a material adverse effect" on Micron's business, operations, financial condition, or stock price. *Id.* at 21.[8]

Similarly, in accord with the PSLRA's Safe Harbor, Micron's earnings calls began with a reminder that it would "include forward-looking statements ***regarding the market demand and supply***, our expected results, and other matters," which "are subject to risks and uncertainties that may cause actual results to differ materially from the statements made today." *E.g.*, Ex. 3 at 3; Ex. 10 at 3; Ex. 12 at 2-3. Micron referred investors to its SEC filings for a discussion of risks and cautioned that it "cannot guarantee" future results or performance. *Id.*

## ARGUMENT

### I. THE APPLICABLE LEGAL STANDARDS

Plaintiffs in securities fraud actions "face formidable pleading requirements to properly state a claim and avoid dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). Plaintiffs must plead specific facts showing, *inter alia*, (1) a material misrepresentation or omission and (2) scienter. *Id.* at 1061. The PSLRA mandates that the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief

[8] These same cautionary disclosures are in Micron's 2024 Form 10-K and Form 10-Qs filed during the Class Period. *E.g.*, Ex. 5 at 5, 21-24, 29-30, 55; Ex. 7(c) at 23, 33, 35-37, 39.

is formed." 15 U.S.C. § 78u-4(b)(1). The complaint also must "state ***with particularity*** facts giving rise to a ***strong inference***" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). The PSLRA "unequivocally raise[d] the bar for pleading scienter." *Tellabs*, 551 U.S. at 317.

Scienter refers to a mental state embracing an "intent to deceive, manipulate, or defraud" (*id*. at 319) and requires deliberate recklessness or conscious misconduct. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Deliberate recklessness is "'a form of intentional or knowing misconduct.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Under the required holistic approach, the court must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323-24. A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. A complaint that fails to meet the PSLRA's high pleading standards "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3). Such is the case here.

## II. THE COMPLAINT FAILS TO PLEAD A FALSE STATEMENT OR OMISSION

Plaintiffs challenge 32 statements that can be categorized as regarding (1) the general supply and demand environment in the industry[9] and for Micron,[10] (2) long-term and vague predictions about Micron's pricing or financial performance in fiscal and calendar 2024 and 2025,[11] and (3) statements that Micron was ramping production (CS 30, CS 31). Plaintiffs' overarching theory is that Micron misstated "the supply and demand environment" by not considering "weakness in customer demand and the competitive threat posed by YMTC." ¶ 7. But ***none*** of the challenged statements are actionable because (a) Plaintiffs' case is fundamentally flawed, (b) the Complaint fails to plead specific facts showing the falsity of any statement when made (CS 1-32), (c) the statements are forward-looking and protected by the PSLRA's Safe Harbor (CS 2-10, 12, 14-16, 19-20, 23-25, 28-29, 31), and/or (d) the statements are non-actionable puffery (CS 1, 3, 6, 8, 14, 16-18, 22-23, 28-32) and/or opinion (CS 1-10, 12, 14-21, 23-29, 31-32).

---

[9] *See* CS 2-8, CS 11, CS 17, CS 21, CS 26, and CS 29, discussing only the general memory and storage industry supply-demand environment and market, not Micron specifically.

[10] *See* CS 1, CS 9-10, CS 13, CS 14, CS 15-16, CS 18-20, CS 22, CS 24-25, CS 27, CS 31-32.

[11] *See* CS 9, CS 12, CS 14, CS 16, CS 23, CS 28, CS 31.

**A. Plaintiffs' Theory Is Fundamentally Flawed**

Plaintiffs' case defies common sense. The best indicator of whether Micron's cautious optimism was fraudulent is to look at its revenue over the Class Period. The pleaded and judicially noticeable facts show that revenue increased every quarter of the Class Period, from $3.69 billion in FQ2-23 to $8.81 billion in FQ1-25, more than double than at the start. *See* Chart A *supra*; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determining sufficiency of complaint requires court to "draw on its judicial experience and common sense"); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 893 (4th Cir. 2014) (allegations considered "in light of context and common sense").

Plaintiffs allege that this remarkable growth should be ignored because ***NAND revenue, which had increased for six consecutive quarters, from $885 million in FQ2-23 to $2.37 billion in FQ4-24***, declined 5% in the last quarter of the Class Period, FQ1-25, to $2.24 billion. ¶ 166. According to Plaintiffs, this decline in one metric for one quarter somehow shows that Defendants' "prior assurances about the NAND market" gradually improving over a nearly two-year Class Period were false or misleading. ¶ 168; *see also* ¶ 167. The statements at issue, however, were made ***as long as 21 months before the end of the Class Period*** and largely concerned ***industry*** supply-demand (not Micron specifically), DRAM/NAND demand ***generally***, customer inventory normalization, and Micron's performance ***before*** FQ1-25.[12] Thus, Plaintiffs' "basis for claiming fraud smells like 'fraud by hindsight, [which] is not actionable.'" *City of Marysville Gen. Emps.' Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, 2011 WL 4584778, at *6 (D. Idaho Sept. 12, 2011), *quoting Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001), *adopted in full*, 2011 WL 4574304 (D. Idaho Sept. 30, 2011). Indeed, the basic tenet of federal securities laws is that statements must be "'false or misleading ***at the time they were made***.'" *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1187-88 (9th Cir. 2024) (blog post written nearly three years before some of the challenged statements could not show falsity); *see also In re Twitter, Inc. Sec. Litig.*, 506 F.

[12] *See*, *e.g.*, nn. 3 & 4 *supra*; CS 8, ¶ 112 (expecting market recovery "taking shape in 2024"); CS 13, ¶ 122 (improving demand in FY-23); CS 22, ¶ 140 (discussing FQ2-24); CS 27, ¶ 151 (discussing FQ3-24 and first nine months of 2024). Plaintiffs do not point to any prior statement addressing NAND demand in the consumer market, let alone predicting it for FQ1-25. *See Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) ("[T]he reasons Plaintiffs offer as to why the statements were false or misleading bear no connection to the substance of the statements themselves.").

Supp. 3d 867, 883 (N.D. Cal. 2020) (no falsity; "plaintiffs do not allege how Twitter could have failed to disclose in July that which had not happened until August at the earliest"), *aff'd sub nom. Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022).

The Complaint's 20-page laundry list of 32 statements, each followed by the same vague, rote reason for falsity (or variations thereof), is symptomatic of the fatal flaw in this case:

> Defendants failed to fulfill their duty to disclose the full truth and created a misimpression of supply and demand for investors and failed to disclose that the characterization of supply and demand ignored factors known or knowable to Micron, including the weakness in customer demand and the competitive threat posed by YMTC.

*E.g.*, ¶¶ 99, 101, 103, 105. "A litany of alleged false statements, unaccompanied by the pleading of ***specific facts*** indicating why those statements were false, does not meet" the PSLRA's exacting standard for pleading falsity. *Metzler*, 540 F.3d at 1070. Plaintiffs' "repetition necessarily means that Plaintiffs' allegations of falsity are not particular to the public statements Plaintiffs identify." *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D. Cal. 2009) (no falsity pleaded).

### B. Plaintiffs Fail To Plead The Falsity Of Any Statement

To be false or misleading, a statement must either "'directly contradict what the defendant knew at the time'" (*Weston*, 29 F.4th at 619), or "create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiffs' Complaint does not come close to pleading either.

#### 1. Plaintiffs Fail to Plead a Material Misrepresentation or Omission Regarding Supply-Demand

The heart of this case—that Defendants created "a misimpression of supply-demand" by not considering "weakness in customer demand and the competitive threat posed by YMTC" (*e.g.*, ¶¶ 99, 101, 103, 105, 107)—fails for many reasons, any one of which compels dismissal.

***First***, the Complaint fails to plead the existence of a "misimpression" of supply-demand. At the start of the Class Period, Micron expressed its belief that industry supply-demand balance "will gradually improve"[13] and, as time progressed, Micron opined there was "an improved industry supply and demand balance." CS 17 (¶ 130); *see* n.4, *supra*. Plaintiffs do not allege that

[13] *See, e.g.*, CS 1, ¶ 98 ("long-term demand"); CS 2, ¶ 100 (TAM for calendar 2024 and 2025 and thereafter); CS 3, ¶ 102 (calendar 2024-2025); CS 16, ¶ 128 (same); CS 8, ¶ 112 (TAM for calendar 2024 and 2025); CS 14, ¶ 124 (same); CS 23, ¶ 142 (calendar 2025).

industry supply-demand balance did ***not*** "gradually improve" or had ***not*** "improved" in 2023 and 2024 when the statements were made. That is not surprising. Supply-demand balance ***did*** improve gradually, as reflected in Micron's improving quarterly revenues. *See* Chart A, *supra*. Plaintiffs therefore fail to plead falsity of those statements.[14] *See Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *2 (9th Cir. Feb. 21, 2023) (positive statements about market trends and competitive landscape not misleading for failure to disclose a report projecting impending downturn where the company "was experiencing record growth at the time they made these comments").[15]

***Second***, Plaintiffs' reliance on the FQ1-25 slight decline in NAND demand to support their contention that "supply and demand were not aligned" during the Class Period (¶ 165) is meritless. The decline had not occurred at the time the statements were made. Plaintiffs fail to plead any facts that undermine, let alone contradict, any statements when made. The Ninth Circuit has long held that securities fraud cannot be pleaded by hindsight. *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). And Defendants' "lack of clairvoyance … simply does not constitute securities fraud" (*Twitter*, 506 F. Supp. 3d at 884), particularly in an industry as volatile as the semiconductor industry. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 933 (9th Cir. 1996) (statements "must be viewed in context," such as whether they were made "in an industry that is laden with risk" and companies were "subject to the influence of other unpredictable forces").

***Third***, yet another glaring deficiency is the absence of pleaded facts showing the assumptions behind Micron's market and Company-specific predictions, let alone that those assumptions did not consider the short- and long-term supply-demand environment or the potential impact of competition from YMTC. Without these facts, Plaintiffs' case fails. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 618 (9th Cir. 2017) (without allegations of "the actual assumptions that Defendants relied upon[,]" "it cannot be

---

[14] Many of the challenged statements only reference the general industry or market and do not even discuss Micron in particular. *See* CS 2-8, CS 11, CS 17, CS 21, CS 26, CS 29. Plaintiffs fail to plead that such statements were false when made.

[15] *See also Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022) ("at the time Align's executives made the six challenged statements, the company's sales were *still growing* in China"); *accord Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (Tesla's remark "that 'great progress' was being made on battery production would potentially be an actionable false statement only if . . . Tesla had been making 'no progress at all.'").

plausibly inferred that Defendants intentionally disregarded the aforementioned events and circumstances" rendering the analysis as false or misleading); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244-45 (3d Cir. 2017) (affirming dismissal; plaintiff did not plead specific facts showing company failed to adequately account for challenges in creating forecasts).

***Finally***, Plaintiffs' allegations fail because Micron repeatedly disclosed the risk of decreases in demand of Micron's products (Ex. 4 at 28), "a weak demand environment," "periods of imbalance" in the market, and competitive threat from YMTC. *Id.* at 22, 23, 28. Micron also disclaimed any guarantee of future results. *E.g.*, Ex. 3 at 3.

#### 2. Plaintiffs Fail to Plead a Material Misstatement or Omission Regarding Micron's Vague, Long-Term Pricing and Financial Performance Predictions

***No Falsity as to "Prospects" and "Revenue Predictions."*** Plaintiffs claim Micron "materially overstat[ed] its prospects" and its "revenue predictions" "were materially misleading" (¶ 165), yet they fail to say what "prospects" were "overstat[ed]" and which "revenue predictions" were materially misleading, and how so—as required by both the PSLRA and Rule 9(b).

Plaintiffs' claim is divorced from reality. ***Quarterly revenue increased throughout the Class Period and more than doubled between the Class Period's start and end***. Plaintiffs do not point to any revenue guidance that Micron failed to achieve. The FQ1-25 decline in NAND demand does not show the falsity of statements made throughout a two-year Class Period. *See* § II.A., *supra*. And FQ1-25 marked Micron's then-highest quarterly revenue in history. That leaves the June 26, 2024 statement (CS 23) that Micron is "well positioned to deliver a substantial revenue record in fiscal 2025." ¶ 142. Plaintiffs plead no facts showing this was false when made. Indeed, fiscal 2025 is ongoing and Micron remains on track to achieve record revenue, having disclosed record revenue in FQ1-25 (*see* Ex. 14), revenue above the midpoint of guidance for FQ2-25 (*see id.*; Ex. 16), and record revenue of $9.3 billion in FQ3-25 (*see* Ex. 17).

***No "Assurances" Regarding YMTC.*** Micron's disclosures that YMTC is a competitive threat did not "reassure[]" investors (¶¶ 5, 81); it warned them. Plaintiffs have not pleaded facts showing that Micron did not consider competitive threats when it spoke about its expectations for the future. *See* § II.B.1, *supra*. Besides, Defendants cannot be expected to know with any accuracy

the plans and strategies of a competitor or perfectly predict their long-term impact. *See In re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1406 (9th Cir. 1996) (rejecting contention that company had to predict competitor's plans and strategies).

***No Falsity as to the Production Ramp Statements.*** Plaintiffs mischaracterize the September 2024 statements that Micron was ramping production "of the industry's most advanced technology nodes" and "higher-value products" (CS 30, ¶ 157; CS 31, ¶ 159) as statements that Micron was "ramping production" generally. ¶¶ 158, 160. These statements clearly refer to the new leading-edge products, not less-advanced ones. Plaintiffs do not allege that the new HBM, 1-beta DRAM, or G8 and G9 NAND nodes were not ramping in September 2024 (because they were) and do not challenge any specific statements about the ramping of these products. *See supra* 4-5 n.7. These statements show that Micron was ramping multiple new products at the time. Even if CS 30 and CS 31 were about production ramping up generally (they were not), Plaintiffs plead no production data, no witness statements, and no internal reports showing that Micron was not ramping production in September 2024. Instead, Plaintiffs speculate that because Micron's inventories "did not meaningfully increase" between FQ2-24 and FQ2-25, Micron must not have been ramping production. ¶ 91. Yet Plaintiffs' own chart shows that inventories ***increased*** 6.7% (from $8.4 billion in FQ2-24 to $9 billion in FQ2-25). *See id.*; *see also* Chart B, *supra*. Increasing inventories ***while also*** increasing sales shows Micron ***was*** ramping production.[16]

**C. Most Of The Statements Are Also Protected By The Safe Harbor**

Most of the challenged statements (CS 2-10, 12, 14-16, 19-20, 23-25, 28-29, 31) were "forward-looking." Under the PSLRA Safe Harbor, they are not actionable if either (1) they are identified as such and accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," ***or*** (2) they are made without actual knowledge of falsity. 15 U.S.C. § 78u-5(c)(1); *see In re Cutera Sec. Litig*., 610 F.3d 1103, 1112 (9th Cir. 2010). A "forward-looking" statement includes "a projection of revenues, income," "earnings" "or other financial items," management's

[16] Plaintiffs also plead no facts contrary to the March 28, 2023 statement (CS 1, ¶ 98) regarding Micron's investment to preserve its competitiveness.

"plans and objectives" for future operations, statements of "future economic performance," and "assumptions underlying or relating to" such statements. 15 U.S.C. § 78u-5(i)(1).

Statements such as "[w]e forecast record revenue in fiscal Q1 and a substantial revenue record with significantly improved profitability in fiscal 2025" (CS 28, ¶ 153); "[w]e think '24 and '25 will be strong years that will drive strong growth" (CS 3, ¶ 102); and "we expect pricing to continue to increase both in NAND and DRAM" (CS 16, ¶ 128) "are classic growth and revenue projections, which are forward-looking on their face." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). Other statements such as "[w]e expect our business fundamentals to improve throughout 2024" (CS 14, ¶ 124); Micron is "well positioned to deliver a substantial revenue record in fiscal 2025" (CS 23, ¶ 142); and "[w]e are entering fiscal 2025 with the best competitive positioning in Micron's history" (CS 28, ¶ 153) are forward-looking because they refer to the future performance of the business.[17]

Other statements are forward-looking because they discuss assumptions "underlying or related to" financial projections, plans for future operations, or future economic performance. 15 U.S.C. § 78u-5(i)(1)(D). These statements concern future demand growth, improving customer inventories, expected shipment volume, and improved pricing (*e.g.*, CS 4, 6, 10, 12, 15), as well as statements regarding expected supply-demand, industry trends, and market environment and size (*e.g.*, CS 2, 4, 5, 7, 15, 19, 24, 29). *See Intuitive*, 759 F.3d at 1059 (expectations of future impact of external economic environment were forward-looking); *Sigman v. Nuscale Power Corp.*, 2025 WL 1455432, at *9 (D. Or. May 21, 2025) (statements about whether favorable market conditions would continue were forward-looking).

Defendants' forward-looking statements were identified as such and accompanied by robust warnings specifically addressing the matters at issue here—"a weak demand environment, industry oversupply, inventory surpluses," "periods of [market] imbalances," and fluctuations in

---

[17] *See Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *10 (N.D. Cal. Jul. 17, 2024) ("we are well positioned to drive growth and profitability in 2022 and beyond," "I think the business is … better year-on-year," "we expect the CIS business to be profitable in the back half of the year" were forward-looking) (emphasis omitted); *Kong*, 2023 WL 2134394 at *1 ("[w]e see no reason why the trend lines won't continue to revert back towards the norm" and "we think Q4…is going to be a very strong cycle for placements of instruments" were forward-looking).

customer demand—which "may cause actual results or events to differ materially[.]" *E.g.*, Ex. 4 at 6, 21-22, 23, 28-29. Independently, the statements are protected because Plaintiffs fail to plead that any Defendant had actual knowledge that any forward-looking statement was false when made. *See* § III., *infra*; 15 U.S.C. § 78u-5(c)(1)(B).

**D. Many Of The Statements Are Also Non-Actionable Puffery Or Opinion**

Many of the statements Plaintiffs challenge are not actionable as a matter of law. For example, statements that Micron's technology is "industry-leading" or "the most advanced" in the industry (CS 30, 32) or that it had "excellent momentum" (CS 32) are too vague to be actionable. Similarly, statements that Micron was "well positioned" (CS 8, 23, 28) are not capable of objective verification.[18] Descriptions of supply-demand balance, market conditions or business fundamentals as "improving," "improved," or "healthy" (CS 6, 14, 16-18, 22, 29, 31-32) also are the very kind that courts have repeatedly held to be puffery.[19] So, too, are statements of "strong" market demand (CS 3, 12).[20] All of these are "optimistic, subjective assessment[s] [that] hardly amount[] to a securities violation." *Cutera*, 610 F.3d at 1111. These "vague statements of optimism" or "other feel good monikers[] are not actionable" because investors "know how to devalue the optimism of corporate executives." *Macomb*, 39 F.4th at 1098. These statements are non-actionable opinions. So, too, are the forward-looking statements since such predictions of the future are inherently opinions.

The Supreme Court has held that opinions are actionable only if: (1) the speaker did not believe the opinion (subjective falsity) and the opinion is incorrect (objective falsity); (2) the

[18] *See*, *e.g.*, *Jaszczyszyn*, 2024 WL 3463348, at *9 (company is "well positioned to drive growth and profitability in 2022 and beyond" was puffery); *City of Marysville*, 2011 WL 4584778 at *11 (company was "positioned" to capitalize on future market opportunities was puffery).

[19] *See*, *e.g.*, *In re Nimble Storage, Inc. Sec. Litig.*, 756 F. App'x 779, 780 (9th Cir. 2019) ("I think we are making really good progress" penetrating a market was puffery); *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) ("healthy pipeline" was "unactionable"); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1167 (C.D. Cal. 2007) ("we are seeing early signs of improvement in both divisions," "[w]e are pleased with the continuation . . . of improvement in our sales trends" were puffery).

[20] *See*, *e.g.*, *Macomb*, 39 F.4th at 1098 (China is a "huge market opportunity" and a "market that's growing significantly for us" were puffery); *Kong*, 2023 WL 2134394, at *2 (assurances that product adoption was "robust," portfolio "has done outstanding," franchise "has grown extremely strongly" and funnel was "very deep" were puffery); *Intuitive*, 759 F.3d at 1060 (company "will come out stronger" and "in a pretty good position" despite economic crisis was puffery).

opinion contains an embedded statement of fact that was false; or (3) the opinion omitted details that created a misimpression about the basis for the opinion. *Omnicare, Inc. v. Laborers Dis. Council Constr. Indus. Pen. Fund*, 575 U.S. 175, 183-86, 188 (2015). None of those circumstances exists here. Plaintiffs fail to plead facts showing that the speakers did not actually hold the beliefs stated or that the opinions were objectively false. *See* § III., *infra.* Plaintiffs do not aver that any embedded facts were false or omitted, creating a misimpression. Nor could they since Defendants shared the bases for their opinions. *E.g.*, CS 3-4, 6-10, 12, 16-17, 19-21, 24-29, 31-32.[21]

For these reasons, CS 1-32 fail and the Complaint must be dismissed.

## III. THE COMPLAINT FAILS TO PLEAD THE REQUISITE SCIENTER

Plaintiffs also fail to plead the element of scienter, an independent basis for dismissal. The Complaint is bereft of facts raising a strong inference that Defendants had "known all along that there was no increase in demand on the horizon." ¶ 97; *see* ¶ 165. Micron's Class Period actions and results—including increasing revenue, repurchasing over $300 million of stock, discontinuing austerity measures, increasing production, and the sold-out status of an HBM product for two calendar years—all point to an honest belief of recovery and growth in the industry.

### A. The Complaint Pleads No Contemporaneous Facts Showing Scienter

Plaintiffs plead ***no*** contemporaneous facts showing that Defendants knew that demand-supply conditions were not improving yet told the market the opposite. Supply-demand balance ***did*** improve and demand ***did*** increase during the Class Period as Defendants predicted.

Even as to FQ1-25, Plaintiffs allege no contemporaneous facts indicating that Defendants "kn[ew] all along" that NAND demand in one market would weaken when they made the statements at issue. The decline itself does not support scienter. *See Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) ("'subsequent dampening of revenue growth' is not an admission that Defendant previously 'knew or recklessly disregarded that demand for its products

---

[21] *See, e.g.*, *Okla. Police Pen. & Ret. Sys. v. PlayAGS, Inc.*, 2025 WL 927296, at *3-4 (9th Cir. Mar. 27, 2025) (expressions of confidence in company's potential growth were non-actionable opinions); *Nimble Storage*, 756 F. App'x at 780 ("I think we are making really good progress" penetrating a market was opinion); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020) ("the challenging landscape is a long-term positive" was nonactionable opinion); *City of Marysville*, 2011 WL 4584778 at *9 (I "believe" a portion of the business presents a "huge opportunity" was non-actionable opinion and puffery).

had been lower than expected.'"), *aff'd* 848 F. App'x. 278 (9th Cir. 2021). Plaintiffs "cannot merely speculate in hindsight that because defendants ran into a sales slowdown . . . by the end of the Class Period that earlier statements of good [supply-demand] health must have been inaccurate." *Twitter*, 506 F. Supp. 3d at 890. Plaintiffs try to divine Defendants' mental state through a far-removed confidential witness and a purported expert's opinion, to no avail.

**B. Plaintiffs' Confidential Witness Does Not Raise A Strong Inference of Scienter**

Plaintiff's lone confidential witness does not clear the two required hurdles: (1) CWs must be described with sufficient particularity "to establish their reliability and personal knowledge"; and (2) the CWs statements "must themselves be indicative of scienter." *Zucco*, 552 F.3d at 995. The gist of CW1's statements is that Micron tracked quarterly goals in a "Flash Report" seen by "high level executives," and "upper management" attended meetings to monitor progress. *See* ¶¶ 40-43. These generic statements could apply to any company; indeed, they say nothing about the Individual Defendants' scienter. The Complaint does not allege a single metric, hard number, or actual contents of any Flash Report, much less one that contradicted any statement when made. *See Intuitive*, 759 F.3d at 1063 (rejecting CWs; "they do not detail the actual contents of the reports the executives purportedly referenced or had access to").[22]

There are more deficiencies. Because CW1, a former low-level employee (an accountant who "assisted with budgeting" and "monitored roadmaps"), left Micron in December 2023 (¶ 30), a year before FQ1-25, CW1's statements "are entitled to little weight." *Police Ret. Sys .of St.Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) (CWs not employed during the entire class period "are entitled to little weight"). Also, CW1 is not alleged to have reported to or even have had any direct contact or personal meetings with the Individual Defendants, and thus lacks both "direct access to the executives" and "first hand knowledge regarding what the individual defendants knew[.]" *Intuitive*, 759 F.3d at 1062-63; *Zucco*, 552 F.3d at 998 (CWs without "reliable personal knowledge

[22] *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1035-36 (9th Cir. 2002) (allegation that company "could regularly track its sales data" was insufficient where plaintiff failed to "plead, in any detail, the contents of any such report or the purported data"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012) (allegations "come nowhere close to identifying 'hard numbers'" or knowledge of "slumping sales").

of the defendants' mental state" fail to support scienter).[23]

Ultimately, CW1's statements cannot be credited because none indicate that the Individual Defendants were provided information that contradicted their public statements. *See City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1132 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) ("No confidential witness has come forward to say that Defendants were aware of secret, adverse financial information and failed to disclose it, much less that such adverse information contradicted Defendants' public representations.").

### C. Plaintiffs' Purported Expert Does Not Raise A Strong Inference of Scienter

Unable to point to any internal information contradicting any statement, Plaintiffs resort to purported expert Arcady Zaydenverg (¶¶ 57-58, 96) in an attempt to conjure support for their claims. Yet "Plaintiffs cannot evade the PSLRA's exacting pleading standards by merely citing an expert[.]" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022). The PSLRA requires pleading "facts," not opinions. 15 U.S.C. §§ 78u-4(b)(1), (2)(A). In limited circumstances, the Ninth Circuit has considered expert opinion to bolster falsity allegations where the complaint provided "detailed information" about the expert's "methodology" and the opinion included "a detailed analysis to support its conclusions" and was corroborated by other reliable sources. *E. Ohman J. v. NVIDIA Corp.*, 81 F.4th 918, 930-32 (9th Cir. 2022). That is not the case here.

Zaydenverg's uncorroborated opinions are that (1) based on Micron's SEC filings, "the movement in inventory amounts and inventory turnover and days in inventory ratios were not consistent with Micron experiencing an unexpected decline in demand" (¶ 58); and (2) "Micron's inventory levels and ratios" from August 29, 2024 through November 28, 2024 (*i.e.*, in FQ1-25) "are not consistent with the expectation of a significant rise in revenue in the immediate future" (¶ 96). The Complaint, however, is devoid of any details regarding his methodology, assumptions, knowledge of Micron's inventory practices, or review of internal documents. *See Nektar*, 34 F.4th

[23] The Complaint's conclusory allegation that Mehrotra and Murphy "received and reviewed Flash Reports" (¶¶ 186, 189) are not attributed to CW1, are devoid of factual support, and are therefore insufficient. *See In re Aspeon, Inc. Sec. Litig.*, 168 F. App'x 836, 838 (9th Cir. 2006) (allegations that defendants received weekly reports from accounting department and attended frequent meetings insufficient); *City of Marysville*, 2011 WL 4584778, at *22 (rejecting CW's "vague, conclusory" statements that "require[d] inferences about who knew what and when.").

at 837 (rejecting expert's opinions based on "questionable assumptions and unexplained reasoning"); *Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050, 1066 (S.D. Cal. 2024) (expert opinion was "entirely conclusory and bereft of" disclosed analytical assumptions).

Zaydenverg's conclusory opinions are all the more unreliable to support scienter: "the data show that Micron was acting as if it was expecting a demand slowdown, not that it was surprised by a demand slowdown." ¶ 96. But he has no personal knowledge of any Defendant's mental state.[24] Based on Zaydenverg's opinions, Plaintiffs merely speculate that had Micron believed that demand was increasing, it would have increased inventory to satisfy the expected increased demand. ¶ 90; *see* ¶¶ 184, 187 (alleging "flat" inventory in FQ1-25). But inventory ***did*** increase (¶ 91; Chart B, *supra*), as did days in inventory, which averaged 159 days since the start of the Class Period (*see* ¶ 94), despite increasing revenue. Grasping for straws, Plaintiffs point to the lack of an inventory write-down relating to FQ1-25 results. ¶¶ 184, 187. That does not support scienter because inventory write-downs occur when net realizable value is below cost in advance of when inventories are sold. Ex. 5 at 65. Thus, the absence of a write-down in FQ1-25 indicates Micron's belief that inventory would be sold above cost—*i.e.*, that Micron continued to expect strong demand. In sum, Zaydenverg's conclusory opinions and Micron's inventory data cannot make up for Plaintiffs' failure to satisfy the stringent pleading requirements of the PSLRA.

**D. Mr. Mehrotra's Stock Sales Do Not Raise A Strong Inference Of Scienter**

Mehrotra's stock sales do not raise the requisite "strong inference" of scienter. Plaintiffs ignore that CFO Murphy did not sell a single share during the 21-month Class Period, which negates any inference that Mehrotra sold on inside information. The Ninth Circuit typically requires "corroborative sales by other defendants . . . to allow insider trading to support scienter." *Metzler*, 540 F.3d at 1067; *accord Ronconi*, 253 F.3d at 436 ("One insider's . . . sales do not support

---

[24] *See Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 860-61 (N.D. Cal. 2019) (no scienter; expert "did not actually talk to employees" or review documents showing inconsistencies and was merely "inferring what likely would have happened"), *aff'd sub nom. Eckert v. PayPal Holdings, Inc.*, 831 F. App'x 366 (9th Cir. 2020); *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *26 (S.D.N.Y. May 19, 2025) (allegations "do not derive from any personal knowledge on [expert's] part of the events at issue" and her "suppositions here do not have any bearing on defendants' scienter"); *accord Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (no falsity; expert "has no personal knowledge of the facts").

the 'strong inference' required . . . where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made."). To evaluate whether stock sales support a strong inference of scienter, courts consider: "'the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with insiders' prior trading history.'" *Zucco*, 552 F.3d at 1005. Mehrotra's stock sales were not suspicious.

Plaintiffs allege that Mehrotra sold 799,284 shares or 43.9% of his total holdings for gross proceeds of $77.47 million during the Class Period (¶¶ 84, 87), whereas "courts generally require executives to have sold 'all or almost all of their holdings in the class period.'" *Petersen v. Stem, Inc.*, 2024 WL 4602710, at *11 (N.D. Cal. Aug. 30, 2024) (no scienter; sales of 44.5%, 69.3%, 80.5%); s*ee In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094-96 (9th Cir. 2002) (same; sales of 74%); *Silicon Graphics*, 183 F.3d at 987-88 (same; sales of 75.3%). "Unless 'stock sales result in a truly astronomical figure,' courts give great weight to the percentage of stock sold." *In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201, at *4 (C.D. Cal. June 17, 2021). The proceeds amount here was not "astronomical." *See id.* ($71 million not astronomical). That Mehrotra allegedly retained 56.1% of his holdings also weighs against an inference of scienter.

The nature and timing of Mehrotra's sales also weigh against scienter because they were all made through a trading plan adopted pursuant to SEC Rule 10b5-1 and entered into on May 15, 2023 (¶¶ 85, 182), over a year-and-a-half before the guidance for FQ2-25. The Ninth Circuit has held that "[s]ales according to pre-determined plans may rebut an inference of scienter." *Metzler*, 540 F.3d at 1067 n.11. As Magistrate Judge Dale explained in finding similar allegations insufficient, "[b]y virtue of the [10b5-1] plans in place, as well as [the other defendant's] failure to sell any stock during the period, Plaintiff[s] ha[ve] not and cannot establish 'unusual' or 'suspicious' sufficient to establish scienter." *City of Marysville*, 2011 WL 4584778 at *22.

The timing of the sales further belies scienter. Nearly half of the sales (363,000 shares) were sold by January 17, 2024, between prices of $66.13 and $86.52 (¶ 84), and ***below*** the $87.09 price ***following*** the alleged revelation of the "truth" on December 18, 2024 (¶ 179). "When insiders miss the boat this dramatically," their sales do not support an inference of scienter. *Ronconi*, 253

F.3d at 435 (no scienter where insiders sold stock for $54 that later rose to $74); *City of Dearborn*, 856 F.3d. at 622 (no scienter; insider sold at prices lower than stock price after disclosure).

**E. Holistically, Plaintiffs Fail To Plead A Strong Inference Of Scienter**

Taking Plaintiffs' scienter allegations collectively, the Complaint fails to plead specific facts giving rise to a "strong inference" of scienter. Defendants predicted that supply-demand in the industry would gradually improve in 2023 and 2024—***and it did***, with Micron's revenue more than doubling during the Class Period. Plaintiffs plead no contemporaneous facts showing that Defendants did not believe their statements when made. Micron's stock repurchase at the average price of $93.07 (Ex. 5 at 46)—***more than*** the $87.09 price after the alleged revelation of the "truth"—"rebuts a finding of scienter, since it is illogical that [a company] would have been repurchasing its shares had it been aware of facts that would indicate the price would fall." *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013). Moreover, Defendants repeatedly warned about the risks Micron faced. *See City of Roseville*, 963 F. Supp. 2d at 1142 ("Robust disclosures of risks . . . 'negate[] an inference . . . [of] intent to defraud.'").

The more plausible and compelling inference is that due to natural, unpredictable market dynamics and conditions, Micron experienced a slight and temporary NAND decline in the last quarter of the Class Period, after ***six consecutive quarters*** of increasing NAND revenue. That does not equate to fraud. "Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi*, 253 F.3d at 432. Here, Micron's honest optimism proved to be accurate, and the "disappointment" was a limited temporary dip in NAND demand during FQ1-25, a quarter of ***record revenues.*** Micron's forthright disclosures and record performance, in an industry with volatile market conditions, are the antithesis of fraud.[25]

**CONCLUSION**

For the reasons stated above, the Complaint should be dismissed.[26]

---

[25] To the extent Plaintiffs purport to allege a scheme liability claim under Section 10(b) (*see* ¶ 203), Plaintiffs fail to plead a scheme, a deceptive act by Defendants in furtherance of a scheme, and scienter for the same reasons discussed in Sections II. and III., *supra*.

[26] Plaintiffs' failure to state a predicate claim under Section 10(b) requires dismissal of its Section 20(a) claim as well. *See Wochos*, 985 F.3d at 1197.

Dated: July 9, 2025

Respectfully submitted:

**HOLLAND & HART, LLP**

By: *<u>/s/Erik F. Stidham</u>*
Erik F. Stidham
A. Dean Bennett

Gregory L. Watts (*pro hac vice)*
Ignacio E. Salceda (*pro hac vice*)
Betty Chang Rowe (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.

*Attorneys for Defendants Micron Technology, Inc., Sanjay Mehrotra, and Mark Murphy*

35378050_v2