**HOLLAND & HART, LLP**
Erik F. Stidham
A. Dean Bennett
800 W. Main Street, Suite 1750
Boise, ID  83702-7714
Telephone: (208) 342-5000
efstidham@hollandhart.com
adbennett@hollandhart.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.-**
Gregory L. Watts (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA  98014
Telephone: (206) 883-2500
gwatts@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Ignacio E. Salceda (admitted *pro hac vice*)
Betty Chang Rowe (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
isalceda@wsgr.com
browe@wsgr.com

*Attorneys for Defendants Micron Technology,
Inc., Sanjay Mehrotra, and Mark Murphy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: MICRON TECHNOLOGY, INC. SECURITIES LITIGATION | CASE NO.:  1:25-CV-00191-BLW |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions.* | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENT**

**Pages**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.      THE COMPLAINT FAILS TO PLEAD A FALSE STATEMENT OR OMISSION ..........2

        A.      Plaintiffs Fail To Plead The Falsity Of Any Statement..............................................2

        B.      Most Of The Statements Are Also Protected By The Safe Harbor ...........................5

        C.      Many Of The Statements Are Also Non-Actionable Puffery Or Opinion ...............6

II.     THE COMPLAINT FAILS TO PLEAD THE REQUISITE SCIENTER ..........................7

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...............................................9, 10

*Bielousov v. GoPro, Inc.*,
2017 WL 3168522 (N.D. Cal. Jul. 26, 2017)........................................................8

*City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*,
2011 WL 4584778 (D. Idaho Sept. 12), *adopted*, 2011 WL 4574304 (D.
Idaho Sept. 30, 2011) .......................................................................................6, 10

*In re Alteryx, Inc. Sec. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021) .....................................................9

*In re Countrywide Fin. Corp. Deriv. Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ...............................................................8

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .............................................................................6

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ................................................................................8

*In re Netflix Inc. Sec. Litig.*,
2005 WL 1562858 (N.D. Cal. June 28, 2005).....................................................4

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. Jul. 21, 2020)........................................................5

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................8

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ...............................................................................9

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) .............................................................................9

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022)..............................................................6

*Kong v. Fluidigm Corp.*,
2023 WL 2134394 (9th Cir. Feb. 21, 2023) ........................................................5

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd sub nom. Central States, SE
and SW Areas Pen. Fund v. Federal Home Loan Mortg. Corp.*, 543 F.
App'x 72 (2d Cir. 2013)........................................................................................4

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
    39 F.4th 1092 (9th Cir. 2022) ...............................................................................7

*Maiman v. Talbott*,
    2010 WL 11421950 (C.D. Cal. Aug. 9, 2010)......................................................10

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) .............................................................................2, 3

*Nursing Home Pen. Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ...........................................................................8, 9

*Plumbers & Pipefitters Loc. Union No. 719 Pen. Tr. Fund v. Dick's Sporting*
    *Goods, Inc.*,
    2025 WL 2325122 (W.D. Pa. Aug. 12, 2025) ......................................................7

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    2012 WL 1868874 (N.D. Cal. May 22, 2012),
    *aff'd*, 759 F.3d 1051 (9th Cir. 2014)...............................................................8, 10

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ...............................................................................10

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...............................................................................10

*Salzman v. ImmunityBio, Inc.*,
    753 F. Supp. 3d 1050 (S.D. Cal. 2024)..................................................................8

*Tadros v. Celladon Corp.*,
    2016 WL 5870002 (S.D. Cal. Oct. 7, 2016),
    *aff'd*, 738 F. App'x 448 (9th Cir. 2018).................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................2

*Todd v. STARR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ........................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................9

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| ¶ or Complaint | Amended Complaint (ECF No. 59) |
| AI | Artificial Intelligence |
| CS | Challenged Statements |
| CW | Confidential Witness |
| Class Period | March 28, 2023 through December 18, 2024 |
| DRAM | Dynamic Random-Access Memory |
| Exs. 1-17 | Exhibits attached to the Declaration of Betty C. Rowe (ECF No. 60-3) |
| Exs. 18-19 | Exhibits attached to the Supplemental Declaration of Betty C. Rowe, filed herewith |
| FQ3-22 | Micron's third quarter ending June 2, 2022 |
| FQ4-22 | Micron's fourth quarter ending September 1, 2022 |
| FQ1-23 | Micron's first quarter ending December 1, 2022 |
| FQ2-23 | Micron's second quarter ending March 2, 2023 |
| FQ3-23 | Micron's third quarter ending June 1, 2023 |
| FQ4-23 | Micron's fourth quarter ending August 31, 2023 |
| FQ1-24 | Micron's first quarter ending November 30, 2023 |
| FQ2-24 | Micron's second quarter ending February 29, 2024 |
| FQ3-24 | Micron's third quarter ending May 30, 2024 |
| FQ4-24 | Micron's fourth quarter ending August 29, 2024 |
| FQ1-25 | Micron's first quarter ending November 28, 2024 |
| FQ2-25 | Micron's second quarter ending February 27, 2025 |
| FQ3-25 | Micron's third quarter ending May 29, 2025 |
| FY-22 | Micron fiscal year ending September 1, 2022 |
| FY-23 | Micron's fiscal year ending August 31, 2023 |
| FY-24 | Micron's fiscal year ending August 29, 2024 |
| FY-25 | Micron's fiscal year ending August 28, 2025 |
| HBM | High Bandwidth Memory |
| Individual Defendants | Defendants Mehrotra and Murphy |
| Mehrotra | Defendant Sanjay Mehrotra |
| Micron or Company | Defendant Micron Technology, Inc. |
| Mot. | Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Class Action Complaint (ECF 60-1) |
| Murphy | Defendant Mark Murphy |
| NAND | NAND Flash Memory |
| Opp. | Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint (ECF No. 64) |

| Abbreviation | Description |
|---|---|
| Plaintiffs | Lead Plaintiffs Morris Zelikovsky, Ronald Timms, and David A. Milman |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| RJN | Defendants' Request for Judicial Notice and Notice of Incorporation By Reference In Support of Defendants' Motion to Dismiss Amended Class Action Complaint (ECF No. 60-2) |
| SEC | U.S. Securities and Exchange Commission |

**\*Unless otherwise noted, all emphases are added and all citations are omitted.**

**INTRODUCTION**

It boggles the mind that Defendants should be forced to defend a securities class action when Micron performed just as it predicted it would, delivering ***consecutively increasing revenue every quarter during the Class Period*** (FQ2-23 to FQ1-25), and ***ending the Class Period with then-record revenue for FQ1-25***.  It also is hard to fathom how investors were damaged when Micron's stock price per share increased from $59.28 at the Class Period's start to $103.90 at the Class Period's end—an increase of 75.3%.  Opp. 1.  Plaintiffs allege and argue that Defendants engaged in securities fraud because they saw bad news coming for FY-25 but nonetheless projected Micron was "on track" for "record revenues for FY-25."  *Id.*; *see also* ¶¶ 5, 64, 83, 100-03, 112-13, 124-25, 128-29, 134-35, 142-43, 153-54, 164-65.  Well, the FY-25 bad news on which Plaintiffs have predicated their theories never came.  Micron's FY-25 recently closed.  ***Micron reported record revenues for FY-25 of $37.38 billion, up an astounding $12.27 billion (49%) over the prior year.***  Micron stock price closed at $183.75, the day before this filing.[1]

Plaintiffs ask the Court to ignore common sense and these inconvenient truths.  Tacitly acknowledging that their case has been gutted, Plaintiffs backpedal and argue that their theory is about Micron's projections for FQ2-25, claiming this was a $1 billion "reduction[]" in guidance for FQ2-25.  Opp. 2, 7, 10, 15, 20.  But nowhere does the Complaint allege that Micron issued guidance for FQ2-25 that it later reduced.  Micron ***never*** "reduced" that guidance.  ***Micron provided guidance for FQ2-25 once, on December 18, 2024.***  ¶¶ 88, 167.  ***And Micron achieved it.***  *See* Exs. 14, 16.  Plaintiffs cannot escape that Defendants' statements about market conditions and Micron's FY-25 performance were accurate.  Accurate predictions cannot be false or misleading.  It turns out that Plaintiffs and their so-called expert were wrong about FY-24 and FY-25, and Micron was right.  The demand-supply balance was improving.  If not, Micron would never have achieved its record-setting financial results.  Plaintiffs' case simply does not reflect

---

[1] In support of their Motion, Defendants filed a Request for Judicial Notice (ECF No. 60-2). Plaintiffs did not oppose the Request.  A Supplemental Request accompanies this reply, with Exs. 18 and 19, reporting Micron's FY-25 performance and recent stock prices, respectively.

reality. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415, 420 (9th Cir. 2020) (affirming dismissal). The Complaint fails to plead falsity.

The Complaint also falls far short of pleading the required "strong inference" of scienter. Unable to respond to Micron's impressive performance during FY-24 and FY-25, Plaintiffs claim that Defendants "planned for" (but did not disclose) the temporary NAND demand weakness that manifested in FQ1-25 and impacted the Company's view of FQ2-25. Opp. 7, 9, 11, 17, 20. But the Opposition points to no admission, no reliable witness statement, no data, and no specific internal report to support an inference of deliberate recklessness or an intent to defraud, let alone a strong one. Plaintiffs' conclusory, uncorroborated expert opinion cannot divine Defendants' mental state from Micron's inventory levels, does not substitute for facts, is rife with flaws (all ignored in the Opposition) and, as Plaintiffs admit, is based on calculations that "investors could calculate" by simple arithmetic throughout the Class Period. Opp. 4. The CEO's stock sales do not save the Complaint because they were made pursuant to a 10b5-1 trading plan implemented more than 18 months before Micron's FQ2-25 financial projections and at prices (¶ 84) well below Micron's current stock price following the impressive FY-25 performance Defendants predicted and about which Plaintiffs complain. Moreover, the CFO's lack of stock sales and Micron's $300 million stock repurchase during the Class Period weigh against scienter.

The PSLRA was enacted to stop "abusive litigation" like that brought by Plaintiffs here. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 (2007). *Tellabs*' warning is appropriate: "if not adequately contained, [securities fraud class actions] can be employed abusively to impose substantial costs on companies and individuals ***whose conduct conform to the law***." *Id.* at 313. The Complaint should be dismissed.

**ARGUMENT**

**I.    THE COMPLAINT FAILS TO PLEAD A FALSE STATEMENT OR OMISSION**

   **A. Plaintiffs Fail To Plead The Falsity Of Any Statement**

   ***Supply-Demand Statements.*** The Opposition points to no specific ***facts*** supporting what is the heart of Plaintiffs' case, an alleged "misimpression of supply-demand" during the Class

Period.  There was no misimpression.  *See* Mot. 8-12.  Just as Defendants cautiously predicted, supply-demand balance *did* improve gradually in 2023 and 2024, as reflected in Micron's steadily improving quarterly revenues, which more than doubled during the Class Period.  *See id.* 9-10 & Chart A therein.  ***Plaintiffs do not (and cannot) deny this gradual improvement***.

Unable to explain Micron's growing revenues, Plaintiffs ignore them and offer arguments that are irrelevant ("Plaintiffs do not allege that Micron's revenue statements were false"), demonstrably untrue (statements were false because they did not disclose "declines in demand" and "supply-demand misalignment"), or speculative (FY-24 performance supposedly "did not reflect current demand").  Opp. 10.  Had supply-demand conditions not been improving, Micron's quarterly revenues would have continued their "steep decline" when supply-demand conditions were imbalanced (¶¶ 52-53).  ***Without improvement in market conditions, revenues surely would not have more than doubled over eight quarters (Chart A), nor would FY-25 revenue have increased $12.27 billion (49%) over FY-24.***  The reasonable (and only) inference is that supply-demand balance was gradually improving.  Plaintiffs fail to show otherwise.  *See Endologix*, 962 F.3d at 415 ("the PSLRA neither allows nor requires us to check our disbelief at the door").

***"Prospects" and "Revenue Predictions."***  Plaintiffs claim Defendants "touted" "Micron's [p]rospects" and predictions of 2025 performance.  Opp. 9.  This argument fails at its core.  Most of the challenged statements were about revenue and growth ***in the industry*** (*e.g.*, CS 2, 3, 5, 8, 14) and every prediction of ***Micron's*** 2025 performance was accurate. In June and September 2024, Micron predicted "substantial revenue record" "in fiscal 2025" (CS 23, 28, 30).  On September 23, 2025, Micron announced record revenues of $37.38 billion for FY-25.  Ex. 18.  In September 2024, Micron "forecast[ed] record revenue in fiscal Q1 [2025]" (CS 28), and in December 2024, Micron delivered "a record quarter" with $8.71 billion in revenue for FQ1-25.  Ex. 14; Chart A.

Unable to plead a false statement, Plaintiffs try to conjure one, claiming, "the fact that Defendants touted 2025 demand and revenues . . . only three months before reducing guidance by $1 billion . . . is classic evidence" of falsity due to the "shortness of time" between the "rosy statements" and the supposed guidance reduction.  Opp. 9-10.  This argument is based on false

premises.  Micron did not "reduce" guidance.  Micron only provided guidance for FQ2-25 on December 18, 2024 (¶¶ 88, 167).  And Micron achieved it.  Exs. 14, 16.  The "rosy statements" of 2025 revenues turned out to be true.

Plaintiffs posit "the long lead times for Micron products and the Company's flat or improving inventories . . . demonstrate[d] that Defendants had planned for declining inventories." Opp. 9.  The supposed "long lead times" do not support falsity because they resulted in *accurate Class Period predictions* of Micron's performance in FY-24 and FY-25.[2]  Plaintiffs' "inventory" theory also should be rejected.  It is based solely on Plaintiffs' conclusory expert opinion, which the Opposition blindly repeats, without addressing its numerous deficiencies.  *See* Mot. 17-18. Indeed, the Opposition provides yet another basis to disregard Plaintiffs' purported expert:  the opinion is based on calculations "investors could calculate" from disclosures in Micron's SEC filings.  Opp. 4 (discussing mathematical steps).  Courts dismiss securities claims where investors could ascertain the alleged misstatement "through simple arithmetic" from public disclosures.[3]

In a single perfunctory sentence, Plaintiffs assert that Defendants' warnings of demand declines and competition from China "had already materialized" (Opp. 11) at the time of the June and September 2024 forward-looking statements but provide no *facts* nor explain how the purported materializations rendered Micron's *accurate* predictions for FY-25 false.  They did not.

Lastly, the Opposition retreats from the Complaint's allegations and claims that the focus of this case is now FQ1-25 results, FQ2-25 projections, and specific FY-25 NAND demand in Micron's consumer market.  But the Complaint does not allege that Micron provided guidance for NAND consumer demand (it did not).  And Micron's record revenue in FQ1-25 (Ex. 14), meeting

---

[2] Plaintiffs' "lead times" theory is also contradicted by the Complaint.  If "long lead times" somehow alerted Micron to demand weakness in one product in one of its many markets in FQ1-25, they clearly would have warned Micron of the widespread demand decline during the 2022 industry downturn, which Plaintiffs concede was "sudden" (¶¶ 55, 56) and "unexpected" (Opp. 5).

[3] *In re Netflix Inc. Sec. Litig.*, 2005 WL 1562858, at *6 (N.D. Cal. June 28, 2005) (no misstatement where number of cancellations "could be calculated through simple arithmetic using other [disclosed] numbers"); *see Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 182-83 (S.D.N.Y. 2012) (no omission; investors could "[t]hrough simple arithmetic" ascertain percentage of portfolio that were subprime loans), *aff'd sub nom. Central States, SE and SW Areas Pen. Fund v. Federal Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

guidance in FQ2-25 (Ex. 16), record revenue in FY-25 (Ex. 18), and strong financial performance throughout the Class Period (Chart A) render Plaintiffs' theory of securities fraud untenable.

***Production Ramp Statements.*** Plaintiffs argue that Defendants' reading of the September 25, 2024 ramp statements is "self-serving" and "requires the Court to improperly make a contested inference in Defendants' favor." Opp. 11. Nonsense. Defendants' "reading" is taken verbatim from the Complaint: "Micron is ramping production **of the industry's most-advanced technology nodes**" (CS 30) and Micron was seeing "the ramp of the **higher-value products**" (CS 31). Immediately following CS 30, Micron stated, "Our 1-beta DRAM and G8 and G9 NAND nodes are ramping in high volume" (Ex. 12 at 3), specifying for which "most-advanced technology nodes" it was ramping production. In any event, the Opposition points to no production data, no witness statements, and no internal reports showing that Micron was not ramping production at the time of the statements—generally or as specifically stated. While Plaintiffs point to the inventory decline "between 4Q23 and 1Q24" (Opp. 11), that slight decline does not show falsity because at the time the statements were made a year later, inventories had steadily increased each quarter in FY-24. *See* ¶ 91; Chart B. Further, ***increasing inventories while also increasing sales shows that Micron was ramping production at the time***. Mot. 12. The Opposition has no response.

### B. Most Of The Statements Are Also Protected By The Safe Harbor

The Opposition does not dispute that CS 2, 5, 7-8, 14, 15, 23 and 28 are forward-looking. Plaintiffs claim that CS 4, 6, 9, 10, 12, 16, 20, and 29 concern "current facts" because they contain the word "ongoing" or "will continue."[4] Opp. 11-12. Numerous cases, however, hold that similar statements are forward-looking because, in context, they regard plans and objectives for future operations, future economic performance, or underlying assumptions.[5] Such is the case here, as

---

[4] Plaintiffs make the same argument for CS 3, 19, 24, and 31, but because those statements do not use the word "ongoing" or "continue," Plaintiffs' argument fails on its face as to them.

[5] *E.g.*, *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *1 (9th Cir. Feb. 21, 2023) ("[w]e see no reason why the trend lines won't continue to revert back towards the norm" was forward-looking); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *15 (N.D. Cal. Jul. 21, 2020) ("we will continue to focus on adding new customers" and "we will continue to drive top line growth" were forward-looking).

the statements describe what Micron projected to happen in the future.[6]  Plaintiffs' case, *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857 (W.D. Wash. 2022), is illustrative.  The statement, "some of those unit economic improvements are durable[,]" was held as forward-looking because "[t]he referenced durability" "concerns a trend that Zillow hopes ***will continue.***"  *Id.* at 869; *see id.* (it "deal[t] with economic indicators that Zillow expects to maintain").  The same logic applies here.

Equally meritless is Plaintiffs' claim that these statements were not accompanied by meaningful cautionary language because "Defendants were aware" that the risks "already existed." Opp. 12.  This Court has previously rejected an identical argument.  *City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*, 2011 WL 4584778, at \*19-20 (D. Idaho Sept. 12), *adopted*, 2011 WL 4574304 (D. Idaho Sept. 30, 2011).[7]  Since Plaintiffs assert no other arguments, the challenged forward-looking statements are protected by the Safe Harbor.[8]

### C.  Many Of The Statements Are Also Non-Actionable Puffery Or Opinion

Plaintiffs' arguments against puffery fail.  Far from "cherry-picking" words (Opp. 12), Defendants merely repeated the bolded words the Complaint emphasizes as misleading.  Plaintiffs

---

[6] *E.g.*, CS 9, 12 ("ongoing demand growth," *inter alia*, "set the stage" for future increased revenue, improved pricing, and profitability); CS 10 ("as we look ahead," we "see that the demand and supply fundamentals will continue to improve"); CS 16 (December 2023 statement that Micron "expect[ed] pricing to continue to strengthen during calendar 2024"); CS 29 (September 2024 statement that given "the ongoing low NAND CapEx environment," among other things, Micron expected a healthy industry supply-demand environment for NAND "in calendar 2025").

[7] The court stated,"[b]y arguing that the cautionary statements were not meaningful because the warned of risks had already come to pass, Plaintiff necessarily implies that Defendants knew of the falsity of the assumptions upon which the earnings statements were based." *City of Marysville*, 2011 WL 4584778, at \*19.  It explained, "the same argument was rejected [by the Ninth Circuit] in *Cutera* as 'a conjunctive reading of the safe harbor provision, under which a sufficiently strong inference of actual knowledge would overcome a claim of safe harbor protection even for statements identified as forward-looking and accompanied by meaningful cautionary language" would "'ignore[] the plain language of the statute, which is written in the disjunctive[.]'" *Id.*, quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).

[8] Plaintiffs' remaining scattershot arguments fail.  Plaintiffs wrongly claim that Defendants "waived" argument that other meaningful cautionary language existed for other statements because Defendants cited warning language from only the 2023 10-K. Opp. 12.  Footnote 8 in Defendants' opening brief contained citations to the same or similar cautionary disclosures in Micron's 2024 Form 10-K and Form 10-Qs filed during the Class Period.  Plaintiffs' argument based on stock sales concern alleged actual knowledge (*id.*), which, as *City of Marysville* teaches, does not defeat Micron's cautionary language.  *See* n.7, *supra*.

also ignore the caselaw by or within the Ninth Circuit holding as inactionable the same or similar vague expressions of optimism. Mot. 14, nn. 18-20. Instead, Plaintiffs make the uncontested point that statements should be considered in context. The problem for Plaintiffs is that their self-selected "context," the old inventory write-off in FQ2-23 and FQ3-23 (Opp. 13), ignores the actual Class Period context in FY-24 and FY-25 of increasing revenues. *See* Chart A; *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022) (statements that China was a great growth market were puffery where sales were still growing, albeit at diminished rate).[9]

Regarding the opinion statements, Plaintiffs fail to show that any of the circumstances in which opinions may be actionable exist. Mot. 14-15. Mehrotra's trading and Micron's inventory levels do nothing to show that Defendants did not believe that Micron "would experience 'record revenues'" (Opp. 14), which ***Micron did***. Plaintiffs fail to identify any embedded "current facts about demand and inventory levels" (*id.*) that were false. And because Defendants' "opinions about 2025 performance" (*id.*) ***were correct***, they did not omit details that created a misimpression.

## II. THE COMPLAINT FAILS TO PLEAD THE REQUISITE SCIENTER

Because their predictions were accurate, it cannot be said that Defendants acted with deliberate recklessness or an intent to defraud. In any event, the Complaint does not come close to meeting the PSLRA's high bar of pleading a "strong inference" of scienter. Plaintiffs rely on (1) CW1; (2) a purported expert's opinions; (3) Mehrotra's stock sales; and (4) the core operations doctrine. None, individually or collectively, satisfies the PSLRA's exacting pleading standard.

***CW1.*** Plaintiffs do not dispute that CW1 is a low-level former employee who had no interaction with the Individual Defendants and left a year before FQ1-25. The Ninth Circuit has repeatedly declined to consider CWs with similar characteristics. *See* Mot. 16-17, nn. 22 & 23.

---

[9] Plaintiffs' cases do not help them. For example, Plaintiffs claim that *Plumbers & Pipefitters Loc. Union No. 719 Pen. Tr. Fund v. Dick's Sporting Goods, Inc.*, 2025 WL 2325122, at *4-5 (W.D. Pa. Aug. 12, 2025), held "[o]ur inventory is healthy and well-positioned" was not puffery. Not so. Rather, the magistrate judge, in a recommendation that has not been adopted to-date, opined that the statements were not protected by the safe harbor and were contradicted by CW allegations (*id.*), neither applicable here. Notably, the magistrate also opined that statements that inventory "is very well positioned and very healthy" were not actionable "statements of corporate optimism." *Id.*

Plaintiffs respond that "courts routinely credit CWs who left before the start of class periods" and CW1's direct contact with a defendant is not necessary (Opp. 19), but their cases do not support either claim.[10] Plaintiffs' cases also do not show that the flash reports (¶ 42) are sufficiently pleaded; one case dismissed the complaint and the other based scienter on defendants' admissions.[11]

*Plaintiffs' Purported Expert.* Plaintiffs' Opposition does not address the many defects afflicting Zaydenberg's opinions (key to Plaintiffs' scienter allegations) and simply repeats that the movement of Micron's inventory levels shows that Defendants planned for reduced NAND demand in FQ1-25 (Opp. 17), a theory Defendants have debunked (Mot. 18). Lacking a substantive response, Plaintiffs erroneously claim, "courts routinely rely on expert analyses in pleadings." Opp. 17 n.5. Not so. In the Ninth Circuit, "Plaintiffs cannot evade the PSLRA's exacting pleading standards by merely citing an expert[.]" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022). Plaintiffs also incorrectly assert that an expert's "methodology or detailed analysis" are "not require[d]." Opp. 17-18, n.5. Their own case declined to credit an expert opinion that was "entirely conclusory and bereft of" analytical assumptions. *Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050, 1066 (S.D. Cal. 2024); *see* Mot. 17-18, n.24. Plaintiffs' general reliance on *Nursing Home Pen. Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004), also is misplaced. There, the expert opinion was corroborated by a reliable former

---

[10] Far from showing "routine[] credit[ing]" (Opp. 17, n.5) of CWs who left before the end of the Class Period, Plaintiffs cite one lower court that merely stated it would give the statements of CWs who left early "their due weight," *Todd v. STARR Surgical Co.*, 2016 WL 6699284, at *7 (C.D. Cal. Apr. 12, 2016), which could be the "little weight" counseled by the Ninth Circuit. *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). Several of the CWs in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1138-39 (9th Cir. 2017), had direct contact with a defendant. In *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1058-59 (C.D. Cal. 2008), the CWs supported a strong inference of a company culture of loose underwriting standards because the CWs' experiences corroborated one another. In stark contrast to *Quality* and *Countrywide*, CW1's allegations are uncorroborated and there are no CWs who had direct contact with the Individual Defendants.

[11] *Tadros v. Celladon Corp.*, 2016 WL 5870002, at *13-14 (S.D. Cal. Oct. 7, 2016) (dismissing complaint; allegations "are conclusory and do not provide specific details about each Defendant's access to information, what Defendants knew, nor how they knew it"), *aff'd*, 738 F. App'x 448 (9th Cir. 2018); *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *6-7 (N.D. Cal. Jul. 26, 2017) (allegations of defendants' access to a system with real-time reporting capability were bolstered by, *inter alia*, defendants' admission that the company tracked its inventory and inventory channel).

employee (*id.* at 1233), whereas Zaydenverg's opinion is not corroborated by anything, much less a reliable source. And, as mentioned, Plaintiffs concede that "investors could calculate" Micron's inventory turnover ratio and days in inventory data upon which Zaydenverg's opinions are based (Opp. 4), providing yet another basis to disregard his opinions. *See* p. 4, *supra.*

Plaintiffs continue to argue that the absence of an inventory write-down in FQ1-25 supports scienter (Opp. 17), but have no response to Defendants' showing that such absence indicates Micron's expectations of strong demand (Mot. 18; Ex. 5 at 65). A company does not write off inventory it believes it can sell. As the FY-25 results show, Micron's expectations were correct.

***Stock Sales.*** Plaintiffs claim that Mehrotra's sale of 43.9% of his holdings for proceeds of $77.4 million is "powerful evidence" of scienter.[12] Not according to Ninth Circuit law, which gives "great weight to the percentage of stock sold," *Oracle*, 380 F.3d at 1232, and has held sales of far higher percentages of holdings insufficient to support scienter.[13] The Ninth Circuit also requires proceeds to be "astronomical" for sales to be suspicious and has held $900 million as astronomical. *Id*. Mehrotra's proceeds do not come close to approaching $900 million. *See In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201, at *4 (C.D. Cal. June 17, 2021) ($71 million proceeds not astronomical).

Plaintiffs would have the Court ignore that the sales were made pursuant to a 10b5-1 trading plan because the plan "was adopted after the start of the Class Period." Opp. 16. But a trading plan is a defense to insider trading allegations if adopted before the insider became aware of material nonpublic information. *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *18 (N.D. Cal. Nov. 27, 2018). Plaintiffs plead no facts showing that Mehrotra knew on May 15, 2023, when he adopted the plan (¶ 85), that NAND demand in the consumer market would be softer and competition from China would increase 18 months later. Plaintiffs also try to minimize CFO

---

[12] Plaintiffs claim the stock sales were the "motive" for the alleged fraud, but it is well settled that motive and opportunity "are not sufficient to establish a strong inference of deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

[13] *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093-96 (9th Cir. 2002) (no scienter; sales of 74%); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 987-88 (9th Cir. 1999) (same; sales of 75.3%)

Murphy's lack of stock sales, but their only case, *Azar*, found that an insider's inconsistent stock sales were "mitigated by" the lack of others' sales and did not raise a "strong" inference of scienter. 2018 WL 6182756, at *20; *see City of Marysville*, 2011 WL 4584778, at *22 (stock sales were not unusual or suspicious where they were made under a trading plan and no other defendant sold).

Finally, Plaintiffs concede "the sales occurred *before* the promised record year of 2025, when the stock price would ostensibly peak" (Opp. 1) but ignore the impact of that concession – Micron **did** have a record FY-25 and its stock price **is** at $183.75, much higher than at any time during the Class Period. Ex. 19. "When insiders miss the boat this dramatically, their sales do not support an inference" of scienter. *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).[14]

***Core Operations.*** Plaintiffs' conclusory invocation of the core operations doctrine does not fill the holes in their scienter allegations. Opp. 19-20. That doctrine applies only in the "rare" circumstance where the alleged misconduct is of such prominence that it would be "'absurd'" that defendants were without knowledge. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). Here, the alleged misconduct was the purported "touting" of predictions of a gradual improvement in supply-demand condition and record revenue for Micron in FY-25, both of which were accurate. Plaintiffs cite no case in which the doctrine was applied without misconduct.[15]

## CONCLUSION

Plaintiffs' theory is that Micron knew bad news was coming for its business in FY-25 and prepared for it. The judicially noticeable facts, however, show this bad news never came and that Micron achieved unprecedented success in FY-25. The Complaint should be dismissed.

---

[14] Micron's $300 million stock repurchase further rebuts any inference of scienter. Mot. 20; Ex. 5 at 46, 62. Contrary to Plaintiffs' assertion (Opp. 20, n.6), the Court may consider the repurchase because it was announced in Micron's 2024 10-K, which the Complaint incorporated by reference, and the contents of which may be taken as true for purposes of a motion to dismiss. *See* ECF No. 60-2 at 2-4; Ex. 5. *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010), is inapplicable. It involved stock purchases by individuals who unsuccessfully sought judicial notice of their Form 4s.

[15] Moreover, the core operations doctrine requires that Plaintiffs plead either "specific admissions" by Defendants "of [their] detailed involvement in the minutia of a company's operations" or reliable "witness accounts" showing that Defendants "had actual involvement" in the alleged misconduct. *Intuitive*, 759 F.3d at 1062. The Complaint pleads neither.

Dated:  October 3, 2025

Respectfully submitted,

**HOLLAND & HART, LLP**

By:   */s/ Erik F. Stidham*
        Erik F. Stidham
        A. Dean Bennett

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Gregory L. Watts (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA  98014
Telephone: (206) 883-2500
gwatts@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Ignacio E. Salceda (admitted *pro hac vice*)
Betty Chang Rowe (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
isalceda@wsgr.com
browe@wsgr.com

*Attorneys for Defendants*
*Micron Technology, Inc., Sanjay Mehrotra and*
*Mark Murphy*