UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| *In re:* MICRON TECHNOLOGY INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Actions.* | Case No.: 1:25-cv-00191-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant's Motion to Dismiss the Amended Class Action Complaint (Dkt. 60). Oral argument was held on December 1, 2025. For the reasons explained below, the Court will dismiss the Amended Complaint but grant Plaintiffs leave to amend.

# BACKGROUND

This is a securities fraud class action on behalf of a class that consists of persons who purchased Micron stock between March 29, 2023, and December 18, 2024—a period from the second quarter of FY 2023 (FQ2-23) to the first quarter of FY 2025 (FQ1-25). Plaintiffs allege that Micron knowingly misrepresented global supply and demand dynamics for microchips during this period, at the same

time that its CEO, Sanjay Mehrotra, entered a plan to sell a large amount of stock.

Micron manufactures semiconductor memory and storage products, including DRAM and NAND chips. Due to the long production lead-time for these chips, Micron must make production decisions a year in advance based on highly detailed forecasts of market demand. Like others in the industry, Micron experienced a sharp and unexpected downturn in the year prior to the Class Period. Micron's revenue dropped by almost 60% beginning in the fourth quarter of 2022, and its inventories increased by over 50%. But, by FY23 2Q—the first day of the Class Period—Micron began predicting a gradual recovery in supply-demand balance, and these statements grew increasingly optimistic over the next year. For instance, in late March 2023, Mr. Mehrotra told investors that Micron remained "confident in long-term demand" and believed that the memory and storage market would "grow to a new record in calendar 2025." *Am. Compl.* ¶ 98-99, Dkt. 59. In June 2024, he reiterated that Micron was "well positioned to deliver a substantial revenue record in fiscal 2025." *Id.* ¶ 142. The next quarter he forecasted "record revenue in fiscal Q1 and a substantial revenue record with significantly improved profitability in fiscal 2025." *Id.* ¶ 153. In August 2024, Micron resumed its stock repurchase program, which had been suspended due to the 2022 downturn.

At around the same time, Mr. Mehrotra adopted a 10b5-1 plan to liquidate nearly half of his Micron holdings. Under the plan, entered on May 15, 2023, Mr.

**MEMORANDUM DECISION AND ORDER - 2**

Mehrotra sold approximately 44% of his stock from August 14, 2023, to June 18, 2024. This resulted in total proceeds of $77,471,537.

In large part, Micron's confidence prove accurate. The company's revenue grew each quarter throughout the Class Period, and the Class Period ended with record quarterly revenue. But this growth was uneven. DRAM sales increased, but sales of NAND products slowed by about 5% in FQ1-25. On December 18, 2024, due primarily to the NAND fall-off, Micron issued reduced earnings guidance for FQ2-25, which included a 20-30% drop in adjusted earnings per share and a roughly 2-4% drop in adjusted gross margin. As a result, Micron's stock price fell from $103.90 to $87.09—a reduction of approximately 16%. In another sign of mismatched supply and demand, Micron's quarterly total inventories increased by 9.2% during the Class Period. Still, these disappointments were not the whole story. Even after the December 18 guidance, Micron's stock price remained more than 50% higher than the price at the start of the Class Period, and quarterly revenue continued to grow.

Plaintiffs identify 32 statements by Micron that allegedly constitute material misrepresentations or omissions. Many of these are fairly general predictions of market conditions and revenue growth, though some specifically pertain to the NAND market. *See Am. Compl.* ¶¶ 104, 110, 116, 122, 126, 128, 132, 134, 144, 146-47, 155, Dkt. 59. The Amended Complaint also includes allegations by a

MEMORANDUM DECISION AND ORDER - 3

confidential witness (CW1), who worked for Micron in financial positions from 1992 to December 2023, most recently in the role of Finance Director for Technology Development. CW1 does not claim to have directly observed fraud, but he attests to Micron's detailed and rigorous process for forecasting demand.

Various groups of Micron shareholders originally filed four different securities fraud actions, which were consolidated under the present case. The Amended Complaint names Micron, Mr. Mehrotra, and Micron Chief Financial Officer Mark Murphy as defendants. Plaintiffs allege that Defendants' misrepresentations and omissions violate Sections 10(b) and 20(a) of the Exchange Act. Defendants now move to dismiss the Amended Complaint.

## LEGAL STANDARD

A plaintiff bringing a private securities fraud action must plead "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, typically, a complaint attacked by a Rule 12(b)(6) motion to dismiss

"does not need detailed factual allegations," though it must set forth "more than labels and conclusions." *Id.* at 555. Under this standard, a complaint will survive a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

Claims for securities fraud, however, must also meet the "formidable" pleading requirements of the Private Securities Litigation Reform Act (PSLRA). *In re. NVIDIA Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Under the PSLRA, a complaint must "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009). Moreover, the complaint must give rise to "a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A "strong inference," the Supreme Court has explained, "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

In this assessment, the court must consider the complaint in its entirety, asking "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323. The court must also take a comparative approach that considers "plausible opposing inferences." *Id.* In other words, "How likely is it

that one conclusion, as compared to others, follows from the underlying facts?" *Id*.

Finally, the PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

## ANALYSIS

Plaintiffs' allegations do not meet the demands of the PSLRA. First, the allegations fail to give rise to a sufficient inference of scienter. Second, the Amended Complaint does not sufficiently plead that the challenged statements were false or materially misleading. Additionally, many of the statements are protected by the PSLRA's Safe Harbor and/or constitute non-actionable puffery.

### A. Scienter

The scienter element of a securities fraud action requires a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976). In the Ninth Circuit, the plaintiff must establish "a strong inference of, at a minimum, deliberate recklessness" regarding the danger of misleading buyers or sellers. *In re. NVIDIA Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Further, though the factual allegations in the complaint are accepted as true at the motion to dismiss stage, "the court must take into account plausible

opposing inferences." *Tellabs*, 551 U.S. at 323. The inference of scienter need not be "irrefutable," but it must be "cogent and at least as compelling as any opposing inference." *Id.* at 324.

Plaintiffs purport to raise an inference of scienter based on (1) Mr. Mehrotra's sale of 43.9% of his stock, (2) CW1's statements about Micron's financial practices, and (3) a retained expert's analysis of Micron's inventory levels and ratios. Viewing the Amended Complaint as a whole, this is insufficient to establish deliberate recklessness on the part of Micron.

First, Mr. Mehrotra's stock sale is not nearly as suspicious as Plaintiffs suggest. "Unusual trading or trading at suspicious times or in suspicious amounts by corporate insiders has long been recognized as probative of scienter." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005), *abrogated on other grounds*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). To determine whether stock sales give rise to an inference of scienter, courts consider factors including " (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Zucco*, 552 F.3d 981 at 1005. The Ninth Circuit gives particular weight to the percentage of stock sold. *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004).

The sale was unusual in that Mr. Mehrotra had not previously made a sale at

anywhere near that scale. But, he sold less than half his holdings, making this factor at best neutral. *See, e.g.*, *Metzler*, 540 F.3d 1049 (no scienter inference from sale of 37% of stock); *In re Dermtech, Inc. Sec. Litig.*, No. 23-cv-1885, 2025 WL 1618193, at* 9 (scienter inference from sale of 22.1% of stock). Further, approximately half of the sales occurred when Micron's stock price was below $87.09—the price after the complained-of December 2024 guidance. In other words, if Mr. Mehrotra was trying to capitalize on lies that he told investors, he did a very poor job of it. Additionally, no other insiders made similar sales. This lack of corroboration is not always fatal, but it certainly weakens Plaintiffs' case. *See Metzler*, 540 F.3d at 1067 (noting that the Ninth Circuit typically requires "corroborative sales by other defendants" to support an inference of scienter).

 Second, CW1's statements also fail to support to an inference of scienter. The PSLRA imposes two hurdles when a complaint uses statements by a confidential witness to establish scienter. First, the witness "must be described with particularity to establish their reliability and personal knowledge." *Zucco*, 552 F.3d at 995. Second, the statements of the witness "must themselves be indicative of scienter." *Id.*

 CW1's statements fall short on the second prong. The Amended Complaint describes CW1's job title and responsibilities, which is sufficiently particular to establish his personal knowledge. His statements, however, are limited to Micron's

general financial practices, such as its "Flash Reports" and revenue forecasting process. *Am. Compl.* ¶ 40, Dkt. 59. Nothing in CW1's account indicates that Defendants knew of the coming downturn in NAND sales or otherwise acted with deliberate recklessness. CW1's allegations are far too broad to create an inference of scienter.

Third, the opinions of Plaintiff's expert, Arcady Zaydenberg, do not support scienter. In a securities fraud action, an expert's statements must meet the same standard as those of a confidential witness. *Chen v. Lyft, Inc.*, 762 F. Supp. 3d 909, 919 (N.D. Cal. 2025). That is, "the expert's opinion must (1) be described with sufficient particularity to establish the expert's reliability and personal knowledge; and (2) themselves be indicative of scienter." *Id.* Mr. Zaydenberg does not appear to have any relevant personal knowledge—his opinion is based on SEC filings— and the Amended Complaint provides no information about his methodology. For these reasons, the Court cannot infer scienter from his opinion that Micron's inventory levels in late 2024 were "not consistent with the expectation of a significant rise in revenue in the immediate future." *See Am. Compl.* ¶ 96, Dkt. 59.

The above allegations fail individually to give rise to a strong inference of scienter, and they also fail when considered collectively. A reasonable person viewing these facts holistically would see a business successfully navigating, albeit with some hiccups, a complex and turbulent market environment—not a scheme to

defraud investors. For this reason, the Amended Complaint must be dismissed.

## B. Falsity

Plaintiffs also have not adequately pled that the challenged statements were materially false or misleading. Statements are misleading if they "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008). This is a context-based assessment, and "some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Miller v. Thane Intern., Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

Because the absence of scienter provides such a clear basis for dismissal, the analysis here will be fairly brief. The challenged statements center on what Plaintiffs describe as Defendants' "misleading touting of Micron's prospects." Dkt. 64 at 9. Essentially, Plaintiffs allege that Micron falsely predicted a market recovery. But although Micron's December 2024 disclosures were weaker than what investors anticipated, due mostly to the drop in NAND sales, that disappointment is not enough to render Micron's statements misleading. To start, the challenged statements were generally made in reference to a fiscal or calendar year—not merely a quarter—and they mostly dealt with broad supply issues. From that perspective, Micron's optimism was accurate. Micron did in fact report record

revenue, and overall demand for Micron's products did continue to grow, notwithstanding the NAND drop. Moreover, even Micron's NAND revenue ballooned overall during the Class Period, from $885 million in FQ2-23 to $2.24 billion in FQ1-25, with the FQ1-25 downturn representing a drop from $2.37 billion. Against this backdrop, a small downturn in the sale of a single product during a single quarter is not enough to render the challenged statements materially false or misleading.

Crucially, the FQ2-25 guidance issued in December 2024—the crux of Plaintiffs' complaints—did not actually contradict Micron's previous statements. The guidance still showed increasing revenue and profitability, consistent with Micron's statements about the improving market. The growth was merely less than expected by analysts outside of the company. In other words, Micron's investors would still be getting richer, but not as much richer as these analysts had led them to believe. Micron's failure to meet the expectations of these outsiders is not the basis for a securities fraud claim.

### C. PSLRA Safe Harbor

Another problem for Plaintiffs is the PSLRA's Safe Harbor for forward-looking statements. The Safe Harbor protects forward-looking statements that either (1) were identified as such and accompanied by "meaningful cautionary statements," or (2) made without actual knowledge of falsity. The line between

these protected predictive statements and descriptions of present conditions can be tricky to define, and defendants cannot invoke the Safe Harbor simply cause they have "combin[ed] non-forward-looking statements about past or current facts with forward-looking statements about projected revenues and earnings." *In re. Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017). Still, even with a narrow interpretation of "forward-looking," most of the challenged statements fall within the Safe Harbor.

Though the Court will not analyze this issue in detail, given that the Amended Complaint fails for independent reasons, statements 2, 3, 5, 8, 9, 10, 12, 14, 15, 16, 19, 20, 23, 24, 25, 28, and 29 appear on their face to be forward-looking. *See, e.g.*, *Am. Compl.* ¶ 100, Dkt. 59 ("[W]e believe that the memory and storage TAM will grow to a new record in calendar 2025 and will continue to outpace the growth of the semiconductor industry thereafter."). It is not fully clear from the filings how many of these were accompanied by "meaningful cautionary statements," but Plaintiffs have not sufficiently alleged that any of the statements were made with actual knowledge of falsity. This leaves only 14 potentially actionable statements, setting aside the other shortcomings already discussed.

### D. Puffery

Finally, many of the challenged statements are nonactionable puffery. "[V]ague statements of optimism like 'good,' 'well-regarded,' or other feel good

monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014). Again, the Court will not dissect this issue in detail, but statements 2, 3, 5, 8, 9, 12, 14, 23, and 28 are exactly the sort of vague optimism that cannot support a securities fraud action.

In sum, the Amended Complaint fails to meet the demands of the PSLRA because it does not raise a strong inference of scienter, and it does not adequately allege that the challenged statements were materially false or misleading. Further, most of the challenged statements fall within the PSLRA's Safe Harbor and/or constitute puffery. Accordingly, the Court will dismiss the Amended Complaint but give Plaintiffs leave to amend to cure these deficiencies.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss Amended Complaint (Dkt. 60) is **GRANTED**. The Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiffs shall file a Second Amended Complaint within 30 days of the date of this Order.



DATED: February 3, 2026

_____
B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 14